Theodore GIBSON, as next friend for Theodore R. Gibson, Jr., Albert Reddick as next friend for Cleo Reddick, J. O. Brown, as next friend for J. O. Brown, Jr., James Lenton Parker, as next friend for Teresa Parker, Richard Powell, as next friend for Richard Powell, Jr., Prince Hepburn, as next friend for Scheren Hepburn, Plaintiffs,

v.

BOARD OF PUBLIC INSTRUCTION OF DADE COUNTY, FLORIDA, a Florida corporation, W. R. Thomas, as Superintendent of the Public Schools of Dade County, Florida, C. Raymond Van Dusen, E. L. Alsworth, Robert S. Butler, Helen Vosloh, and Anna Brenner Meyers, as members of the Board of Public Instruction of Dade County, Florida, Defendants.

Civ. No. 6978–M.

United States District Court
S. D. Florida,
Miami Division.

Dec. 22, 1958.

G. E. Graves, Jr., Miami, Fla., Robert L. Carter, New York City, for plaintiffs.

Boardman, Bolles, Davant & Lloyd, Miami, Fla., for defendants.

LIEB, District Judge.

The plaintiffs are six Negro children of public school age, citizens of the

United States and of the State of Florida, all of whom reside in Dade County, Florida. On June 12, 1956, they filed this suit by their respective parents as next friends, as a class action, against the defendants, C. Raymond Van Dusen, E. L. Alsworth, Robert S. Butler, Helen Vosloh and Anna Brenner Meyers, as members of the Board of Public Instruction of Dade County, Florida, hereinafter referred to as the "Board", and W. R. Thomas, Superintendent of the Public Schools of Dade County, Florida. In their complaint the plaintiffs prayed for a declaratory judgment that article 12, section 12, of the Constitution of the State of Florida, F.S.A., and section 228.09, F.S.A., each violate the Fourteenth Amendment to the Constitution of the United States in that they require racial segregation in the public schools of Florida and they claimed that these invalid measures were being enforced by the defendants to the irreparable damage of the plaintiffs.

Plaintiffs also prayed for an order of the Court requiring defendants to promptly present a plan of desegregation of the public schools of Dade County, and for an injunction restraining and enjoining the defendants, and each of them, from requiring these plaintiffs and all other Negroes of public school age to attend or not to attend public schools of Dade County because of race.

The complaint further alleges that on September 7, 1955, plaintiffs petitioned the defendant Board to abolish racial segregation in the public schools of Dade County as soon as practicable, but the Board had not done so but was continuing to enforce a certain resolution of the Board adopted on August 12, 1955, providing for the continued maintenance of the said schools on a non-integrated basis.

The defendant Board is a corporation under the provisions of section 230.21 F.S.A. Since this suit was filed, two new members, Mrs. Lyle Roberts and S. D. Phillips, Jr., have been added to the Board, all other members remaining. Also since the suit was filed Dr. Josiah Calvin Hall has replaced the defendant W. R. Thomas as Superintendent of the Public Schools of Dade County.

The complaint was amended several times, after which a motion to dismiss for failure to state a claim was granted by the District Court. On Appeal to the Fifth Circuit Court of Appeals, the decision of the District Judge was reversed [1] on the ground that so long as the requirement of segregation in the public schools of the County existed, it was not necessary for plaintiffs to apply for admission to any particular school and it was premature to consider the effect of the newly enacted (since the suit was filed) Florida Pupil Assignment Law [2] which provides for assignment and reassignment of pupils to the public schools of the State.

The defendants then answered the complaint denying that plaintiffs were entitled to maintain the suit as a class action and denying that plaintiffs were deprived of their rights to attend the public schools of the County because of their race. The answer admitted that article 12, section 12, of the Florida Constitution and Section 228.09, F.S.A., purport to require racial segregation in the schools, but defendants agreed that these provisions were rendered void and of no effect by virtue of the decision of the Supreme Court of the United States in Brown v. Board of Education of Topeka, Shawnee County, Kansas [3], and contended that defendants no longer followed or enforced them. Defendants further admitted in their answer that the Board had adopted the said resolution of August 17, 1955, and that it had been followed and enforced in the operation of the schools of the County during the school term of 1955–56, but contended

1. Gibson v. Board of Public Instruction of Dade County, 5 Cir., 1957, 246 F.2d 913.

2. Section 230.232, F.S.A.

3. Brown v. Board of Education of Topeka, 1954, 347 U.S. 483, 74 S.Ct. 686, 98 L. Ed. 873.

that since the passage of the Pupil Assignment Law by the Legislature of Florida in July, 1956, the Board had promptly adopted its resolution of August 24, 1956, which implemented the Pupil Assignment Law, superseded the previous resolution complained of, and provided that thereafter all assignments of pupils would be made by the Board pursuant to the provisions of the said Pupil Assignment Law. Defendants further claimed that in assigning all pupils to schools since August 17, 1956, they have followed and enforced only the provision of the Pupil Assignment Law and the implementing resolution of the Board adopted August 24, 1956.

The evidence presented by the parties was heard by the Court without a jury. At the conclusion of the hearing the Court reserved decision. Briefs were filed by both sides and were duly considered by the Court.

■ Plaintiffs are entitled to bring action for declaratory relief as a class suit, and the objections of defendants to such procedure is without merit.[4]

Article 12, section 12, of the Constitution of the State of Florida is a part of the Constitution adopted in 1885 and provides as follows:

"White and colored children shall not be taught in the same school, but impartial provision shall be made for both."

Section 228.09, Florida Statutes, was adopted in its present form as a part of Chapter 19355, Laws of Florida 1939 and provides as follows:

"The schools for white children and the schools for Negro children shall be conducted separately. No individual, body of individuals, corporation, or association shall conduct within this state any school of any grade (public, private, or parochial) wherein white persons and Negroes are instructed or boarded in the

same building or taught in the same classes or at the same time by the same teachers."

■■ Article 12, section 12, of the Florida Constitution and section 228.09, F.S.A., obviously violate the provisions of the Constitution of the United States under the decision of the Supreme Court in the Brown case. All parties concede this fact. A three-judge court, in this case, is not required.[5]

■ Plaintiffs are entitled to have a judgment by the Court in this suit declaring that the said Article 12, section 12, of the Constitution of Florida, and the said section 228.09, F.S.A., are each invalid and unenforceable.

■ As to the prayer of the complaint that the Court order the defendants to promptly present a plan of desegregation of the schools, the Court finds that the Florida Pupil Assignment Law enacted by the Legislature of Florida since the filing of this suit meets the requirements of such a plan and the demands of the plaintiffs. That Act provides a comprehensive plan and directive for the enrollment and assignment of all pupils in the public schools by the Boards of Public Instruction of the several counties and for appeals from such decisions made by the Boards, all on an individual basis. No reference whatever is made in the Act to consideration of race or color of the pupils.

Plaintiffs made no challenge to the validity of the Pupil Assignment Law. It, therefore, enjoys a presumption of validity as a State Statute. Defendants as state officials are required to follow the provisions of the State laws until they are repealed, superseded or held invalid by the Courts.

The plaintiffs have failed to show their right to an injunction at this time. When the suit was filed, segregation of the races in the schools was required

4. Orleans Parish School Board v. Bush, 5 Cir., 1957, 242 F.2d 156.

5. Bush v. Orleans Parish School Board, D.C.E.D.La., 1956, 138 F.Supp. 337; Carson v. Warlick, 4 Cir., 1956, 238 F.2d 724; Kelley v. Board of Education of City of Nashville, D.C.M.D.Tenn.1956, 139 F.Supp. 578.

and enforced under the provisions of the State Constitution, and the statute and resolution of the Board heretofore referred to. But within three months after the filing of this suit and before the opening of the next school term, the State Legislature passed the Pupil Assignment Law and the Board adopted its implementing resolution thereto, providing for the assignment by the Board of all pupils under the authority and provisions of the Pupil Assignment Law. The evidence shows that since the adoption of the said implementation resolution of the Board on August 24, 1956, all assignments and reassignments of pupils to schools in the County have been made by the Board itself purporting to act under the said implementation resolution and the Pupil Assignment Law. The evidence further shows that during that period several of the plaintiffs themselves made application to the Superintendent of Schools under the law for changes in their school assignments. These requests were denied by the Superintendent and the plaintiffs involved took their appeals under the law to the Board which promptly set dates for hearings on these appeals. Before the hearings could be had, the plaintiffs withdrew and abandoned their appeals. The Board has not attempted at any time to enforce article 12, section 12, of the Constitution, or section 228.09, F.S.A., or the resolution of the Board adopted August 13, 1955, after August 24, 1956, and since the said constitutional provision and the said statute are now declared to be invalid and unenforceable, there remains only the Florida Pupil Assignment Law governing the actions of the defendants in the matter of assignment of pupils to schools of the County. This being the unchallenged law of the State, it must be followed by the plaintiffs and defendants alike. If in the enforcement of the provisions of that Act, the defendants or any of them should violate the provisions of the law or should require any one to attend or not to attend the public schools of the County because of race, the parent or guardian of the child affected by such conduct may ask for a review of such decision by the State Board of Education and then appeal to the Courts. This procedure is available only on an individual basis and is not available by class action.

The recent decision of the Supreme Court of the United States rendered on November 24, 1958, affirming the decision of a three-judge court in the Alabama case of Shuttlesworth v. Birmingham Board of Education [6] supports this conclusion.

In that case, four Negro pupils brought a class action in the United States District Court to enjoin the Birmingham, Alabama, Board of Education from enforcing the Alabama School Placement Law, Laws 1955, p. 492, and from refusing on the basis of race or color to permit the plaintiffs and others similarly situated to attend or transfer to public schools closer to their respective homes than the schools to which they were then assigned. Judge Rives, of the Fifth Circuit Court of Appeals, presided over the three-judge court and wrote the opinion which the Supreme Court later affirmed in all respects.

The three-judge court held that the challenged School Placement Law of Alabama was not invalid upon its face and that "it furnished the legal machinery for an orderly administration of the public schools in a constitutional manner by the admission of qualified pupils upon a basis of individual merit without regard to their race or color."

It is noted that the provisions of the Alabama School Placement Law are similar in all material respects to those of the Florida Pupil Assignment Law, both of which were modeled after the North Carolina Pupil Placement Act.

The three-judge court in the Birmingham case also denied all injunctive relief to the plaintiffs and left them to the fair operation of the School Placement Law and the remedies therein provided. The Court in that case was likewise consider-

6. Shuttlesworth v. Birmingham Board of Education, D.C.Ala., 1958, 162 F.Supp. 372.

ing the issue raised by the complaint as a basis for the application for an injunction that despite the passage of the Pupil Placement Law, Negro students were still being assigned to the same schools on a basis of segregation of the races irrespective of the nearness of other public schools to the homes of the plaintiffs.

In that case also, the opinion shows that the School Board had refused to render any opinion or take any action upon tests given by the Board to plaintiffs as a basis of assignment under the Act. It has already been noted that in the present case, the plaintiffs themselves refused to proceed with clearly available procedure offered under the Florida law for relief from adverse decisions of the school authorities.

In denying the injunction in the Birmingham case, the three-judge court pointed out that any complaints of improper administration of the School Placement Law should be tested by the Courts only after exhaustion by the pupil or parent of the administrative remedies provided by the State law, and quoted from an opinion of the late great Chief Judge Parker, of the Fourth Circuit Court of Appeals, in a similar case, Carson v. Warlick:[7]

> "Somebody must enroll the pupils in the schools. They cannot enroll themselves; and we can think of no one better qualified to undertake the task than the officials of the schools and the school boards having the schools in charge. It is to be presumed that these will obey the law, observe the standards prescribed by the legislature, and avoid the discrimination on account of race which the Constitution forbids. Not until they have been applied to and have failed to give relief should the courts be asked to interfere in school administration."

The plaintiffs now have available to them adequate remedies under the Pupil Assignment Law for any of their grievances pleaded in the complaint. The record shows that they have not pursued them and until they do so and have been denied their rights they are not entitled to injunctive relief.

An appropriate order will be entered herein in conformity with this memorandum opinion.

---

7.   Carson v. Warlick, 4 Cir., 1956, 238 F.2d 724, 728.